(December 6, 1909.)

JOHN PORTER, Respondent, v. THE TITLE GUARANTY AND SURETY COMPANY, Appellant, and JOHN W. MONARCH and WM. S. PORTER, Doing Business Under the Name of MONARCH & PORTER, Respondents.

[106 Pac. 299.]

MORTGAGE—PAYMENT—ASSIGNMENT—SUBROGATION—ATTORNEY'S FEES.

1. *Held,* that the evidence in this case supports the finding of the court, to the effect that the plaintiff's mortgage was given in good faith for a valuable consideration and without intention to hinder, delay or defraud the creditors of the mortgagor.

2. Where it appears that money due and belonging to a mortgagor has been paid to the mortgagee upon the indebtedness secured by such mortgage, such debt thereby becomes liquidated and extinguished, and such mortgage is no longer the subject of sale and transfer.

3. Payment is the discharge of a debt and is not a contract. The purchase of a note and mortgage is a contract of sale requiring the mutual assent, either express or implied, of a buyer and seller and a consideration.

4. Where a firm has a contract with the government for the construction of irrigation works and receives payment from the government on such contract, and turns the money over to a creditor to be applied upon a debt due from such firm to such creditor, and it further appears that a third person made certain advances and loans to such contracting firm to aid them in carrying out their contract with the government, the payment made by such firm to its creditor will be deemed a payment by such firm and not by the person advancing or loaning such money in aiding such firm to carry out said contract.

5. Where a mortgagor makes payments upon the mortgage debt out of money belonging to the mortgagor, and such payments amount to the sum secured by such mortgage, such mortgagor cannot have such mortgage assigned to another creditor to secure a debt due such creditor, to the prejudice of a creditor or subsequent mortgagee.

6. Subrogation is the creature of equity and will not be permitted where it will work injustice to the rights of those having equal or superior equities; and where it appears that money belonging to a mortgagor is paid to a mortgagee upon the mortgage indebt-

edness, and it further appears that there is a second mortgage upon such property, it is the right of the second mortgagee to have the money paid by the mortgagor upon the first mortgage applied in discharge and in liquidation of such mortgage, and a third mortgagee cannot claim that he is subrogated to the rights of the first mortgagee by reason of the fact that he made advances and loans to the mortgagor which enabled the mortgagor to earn the money which was applied in payment of the first mortgage.

7. Where a mortgagee agrees in writing that his mortgage, although prior in date, shall be held subject to another certain mortgage, and there is no consideration stated in such agreement; and it appears as a fact that no consideration passed to the first mortgagee for making such agreement, and the only consideration claimed is that the second mortgagee made advances and loans to the mortgagor which he would not otherwise have made, and it further appears that advances and loans have been made by the second mortgagee prior to the making of such agreement and that there was no change in the method of making such advances or loans, and that the second mortgagee was under bond to see that the mortgagor carried out and fulfilled a contract for which such advances were made, *held,* that the evidence is sufficient to support a finding of the court that there was no consideration for such agreement and that the party making such agreement was not estopped to claim that his mortgage was prior to that held by the other party to such agreement.

8. In this state to entitle a plaintiff to recover attorney's fees upon the foreclosure of a mortgage, where it is stipulated that a certain specified sum may be recovered as attorney's fees in such foreclosure proceedings and that the same are reasonable, the plaintiff must also prove that he has agreed to pay his counsel a stipulated or reasonable fee for his services in such action, and the reasonableness of the fee agreed to or what would be a reasonable fee in such action.

(Syllabus by the court.)

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Fremont Wood, Judge.

An action to foreclose a chattel mortgage. Judgment for plaintiff. Defendant and cross-complainant appeals. *Affirmed.*

Neal & Kinyon, for Appellant.

The undisputed facts in this case entitle the appellant as against the plaintiff to an "equitable assignment by way of

subrogation'' of the First National Bank mortgage, to the extent that the appellant has furnished money which directly or indirectly was used in the payment of the bank's mortgage. (3 Pomeroy Eq. Jur., 3d ed., secs. 1211, 1212; *Wilson v. Wilson,* 6 Ida. 597-607, 57 Pac. 708; *In re McGuire,* 137 Fed. 967; *Union Mortgage B. & T. Co. v. Peters,* 72 Miss. 1058, 18 So. 497, 30 L. R. A. 829, 833.)

If money is advanced to a debtor to discharge an existing first mortgage upon his property, and in pursuance of an agreement that the lender is to have a first lien upon the property for the repayment of the sum loaned, the lender is entitled, as against a junior encumbrancer, to be treated as the assignee of the first mortgage which has been paid off and discharged with the money loaned, whenever it becomes necessary to do so to effectuate the agreement with the lender and to prevent the junior encumbrance from being raised *accidentally* to the dignity of a first lien contrary to the intention of the parties. (*Building etc. Assn. v. Sparks,* 111 Fed. 647-652, 49 C. C. A. 510; *Home Savings Bank v. Bierstadt,* 168 Ill. 618, 61 Am. St. 146, 48 N. E. 161; *Thompson v. Connecticut etc. Co.,* 139 Ind. 325, 38 N. E. 796; *Farm Land etc. Mortgage etc. Co. v. Elsbree,* 55 Kan. 562, 40 Pac. 906; *Straman v. Rechtine,* 58 Ohio St. 443, 51 N. E. 44, *Fievel v. Zuber,* 67 Tex. 275, 3 S. W. 273.)

The doctrine of subrogation has nothing of technicality about it; and he who in administering it would "stick in the letter" forgets the end of its creation and perverts the spirit which gave it birth. It is the creature of equity, and real essential justice is its object. (*Enders v. Brune,* 4 Rand. (Va.) 447; *Hawker v. Moore,* 40 W. Va. 49, 20 S. E. 848, 68 L. R. A. 521, and note; 1 Jones' Mortgages, 5th ed., sec. 877.)

Where it is equitable that a person furnishing money to pay a debt should be subrogated for the creditor or in the place of the creditor, the person making such payment will be subrogated to the creditor's rights as mortgagee. (Jones' Chattel Mortgages, sec. 659; *Walker v. Stone,* 20 Md. 195; *Crippen v. Chappel,* 35 Kan. 495, 57 Am. Rep. 187, 11 Pac.

453; *Yaple v. Stephens,* 36 Kan. 680, 14 Pac. 222; *Bradley v. Bond,* 101 Md. 691, 61 Atl. 504.)

Consideration to the plaintiff may be either benefit received by the plaintiff or received by some other person at his request, or may be detriment incurred by the other party to the contract (the appellant). (Page on Contracts, sec. 274; *Rucker v. Bolles,* 80 Fed. 504, 25 C. C. A. 600; *Violett v. Patton,* 5 Cranch, 142, 3 L. ed. 61, 63; *Dyer v. McPhee,* 6 Colo. 174, 193; *Clark v. Sigourney,* 17 Conn. 517; *Ballard v. Burton,* 64 Vt. 387, 24 Atl. 769, 16 L. R. A. 664, 667; *Bank of New Hanover v. Bridgers,* 98 N. C. 67, 2 Am. St. 317, 319, 3 S. E. 826; *Barrett v. Mahnken,* 6 Wyo. 541, 71 Am. St. 953, 955, 48 Pac. 202.)

"A written instrument is presumptive evidence of consideration." (Secs. 3314, 3222, Rev. Codes; *Brumback v. Oldham,* 1 Ida. 711.)

Under no view of the law had the court the right to wholly disallow attorney's fees, and under any view of the evidence before the court the court must allow at least $1,500 to the appellant on that behalf. (11 Cyc. 105, 106; *Hurni v. Sioux City Stock Yds. etc.,* 138 Iowa, 475, 114 N. W. 1074, 1076.)

S. L. Tipton, A. A. Fraser, C. H. Libby, and John Porter, for Respondent.

The so-called relinquishment fails to show or recite any consideration for its support, and there was no proof offered upon the trial in support of the alleged consideration named in appellant's answer. (Clark on Contracts, pp. 147, 152, 184.)

If the indebtedness of Monarch & Porter to the First National Bank of Idaho, or to C. W. Moore, trustee, was paid, it is immaterial who paid the debt, or at whose request it was paid. The indebtedness being paid, the property mortgaged and the securities pledged were thereby discharged and released. (*Moran v. Abby,* 63 Cal. 61.) When the indebtedness is paid out of the debtor's funds, though with an agreement of subrogation, such payment will not entitle the party to subrogation. (*Denton v. Cole,* 30 N. J. Eq. 244.)

STEWART, J.—On July 8, 1905, the firm of Monarch & Porter, composed of John W. Monarch and William S. Porter, entered into a contract with the United States for the construction of certain canals, ditches, etc., under what is known as "The Minadoka Irrigation Project." Afterward said firm of Monarch & Porter executed three several chattel mortgages on their plant and personal property as follows: A mortgage dated Dec. 13, 1905, to C. W. Moore as trustee of the First National Bank of Idaho, to secure a promissory note in the sum of $10,000; a mortgage dated Mar. 6, 1906, to John Porter, to secure a note in the sum of $15,000; a mortgage dated Mar. 12, 1906, to the Title Guaranty & Surety Company, to secure a promissory note in the sum of $20,000. Afterward this action was commenced by John Porter to foreclose the chattel mortgage given to him on Mar. 6, 1906, and in which the firm of Monarch & Porter and the Title Guaranty and Surety Company were made defendants. The cause was tried to the court and findings of fact and conclusions of law were made, and a decree entered decreeing a foreclosure of all three of said mortgages, and decreeing that plaintiff had a first and paramount lien upon the mortgaged property. A motion for a new trial was made by the Title Guaranty and Surety Company and denied, and from that order the Title Guaranty and Surety Company appeal. No appeal, however, was taken by Monarch & Porter.

The complaint of plaintiff was in the ordinary form. It was alleged that defendant, the Title Guaranty and Surety Company, has or claims to have some interest in the property described in the complaint. In the answer of the Title Guaranty and Surety Company the indebtedness claimed to be due to the plaintiff was denied; and it was alleged that the mortgage was fraudulent and given with the intent to hinder, delay and defraud the creditors of the firm of Monarch & Porter; that there was no consideration for such mortgage, and that such mortgage was subsequent and subject to a mortgage claimed to be held by the defendant in the sum of $20,000. The answer further set forth that a mortgage was given to C. W. Moore, as trustee for the First National Bank

of Idaho, for the sum of $10,000, which for a valuable consideration had been assigned to the defendant; and that such mortgage was prior in time and superior to the lien claimed by the plaintiff under his mortgage. The defendant also plead that on May 24, 1906, the plaintiff, for a valuable consideration paid by the defendant, the Title Guaranty and Surety Company, to the plaintiff, did execute and deliver to the defendant a certain indenture and declaration in writing, under seal, stipulating, agreeing and declaring that his mortgage referred to in the complaint was and is to be deemed and held to be inferior, subject and subsequent to the $20,000 mortgage given the defendant.

The defendant in addition filed a cross-complaint which among other things alleged: That the defendant made certain advances to the firm of Monarch & Porter at their instance and request for the purpose of aiding them in carrying out their contract with the government of the United States, under a certain contract made between the defendant and the firm of Monarch & Porter, and on Mar. 12, 1906, executed a promissory note for the sum of $20,000 and a mortgage to secure the same. The answer also sets up the mortgage made to C. W. Moore, as trustee for the First National Bank, and that the defendant paid and caused to be paid to C. W. Moore the amount due upon his mortgage; and that in consideration thereof the same was assigned to the Title Guaranty and Surety Company, and that such mortgage was a prior lien over the mortgage of the plaintiff. Judgment was asked that the plaintiff be estopped from denying that his mortgage was prior to the defendant's, and for a foreclosure of the mortgage given to the Title Guaranty and Surety Company and also the Moore mortgage assigned to such company.

The court among other things found: The making of the mortgages at the times and for the amounts alleged in the complaint and answer; that the mortgage given to the plaintiff for $15,000 was for a valuable consideration and was not given with the intent to hinder, delay or defraud any creditors of the firm of Monarch & Porter; that the mortgage given to C. W. Moore, as trustee for the First National

Bank, was paid in full by the moneys and funds of the firm of Monarch & Porter and in no other manner; that the agreement made on May 24, 1906, purporting to make the plaintiff's mortgage subject and subsequent to the $20,000 mortgage of the Title Guaranty and Surety Company, was made without any consideration whatever; that there is due plaintiff on his mortgage the sum of $17,700; that there is due the defendant, the Title Guaranty and Surety Company, upon the mortgage given to it and the bank mortgage, the sum of $28,549.14; and that the defendant is entitled to have both of said mortgages foreclosed.

As conclusions of law the court finds: That there is due the plaintiff the sum of $17,700; that plaintiff's mortgage is a first and prior lien upon the property described therein, and that the defendant's mortgages are subsequent and inferior and subject to the claim of the plaintiff and that the plaintiff is entitled to a foreclosure of his mortgage as a first lien; that as against Monarch & Porter, the Title Guaranty and Surety Company is entitled to a foreclosure of the Moore mortgage and also the $20,000 mortgage given to the company; that the plaintiff is not estopped by the indenture or writing made on May 24, 1906. The court thereupon entered a decree in accordance with the findings and conclusions of law.

The assignments of error urged upon this appeal may be disposed of in a discussion of the following propositions: First, was the mortgage of the plaintiff made in good faith and for a valuable consideration and without intention to defraud the creditors of Monarch & Porter? Second, was the mortgage given to C. W. Moore, as trustee of the First National Bank, paid by and assigned to the Title Guaranty and Surety Company, and by reason thereof was the Title Guaranty and Surety Company entitled to have such mortgage declared a prior lien to that of the plaintiff in the decree of foreclosure? Third, is the plaintiff estopped by reason of the document or instrument signed by him on May 24, 1906, to claim that his mortgage is a prior lien to that of the $20,000 mortgage held by the Title Guaranty and Surety Company?

Fourth, did the court err in not allowing the appellant attorney fees on the foreclosure of its mortgage?

As to the first proposition, the court has found that the plaintiff's mortgage was given in good faith for a valuable consideration and without any intent to hinder, delay or defraud the creditors of Monarch & Porter. We have not discovered any conflict in the evidence on this question. All of the evidence, which carries with it any conviction, is in support of the proposition that the plaintiff's mortgage was given in good faith to secure a *bona fide* indebtedness, and without any intention to hinder, delay or defraud the creditors of the firm of Monarch & Porter, and clearly and conclusively supports the finding of the trial court.

As to the second proposition, the court finds that the notes given to C. W. Moore, as trustee for the First National Bank, were paid in full by the moneys and funds of the firm of Monarch & Porter and in no other manner. The question then arises: Does the evidence support this finding? It is stipulated between counsel that Monarch & Porter had executed and delivered to the First National Bank of Idaho their irrevocable power of attorney in favor of said bank, authorizing said bank to collect from the United States government any and all moneys that might accrue to said Monarch & Porter for and on account of monthly estimates for work done on their contract, and when collected to be applied on payment of the advances made to the firm of Monarch & Porter; that this power of attorney was canceled by a letter addressed to the secretary of the treasury by the bank on May 19, 1906, after all indebtedness to said bank had been fully satisfied; that the indebtedness of Monarch & Porter to the bank consisted of the sum of $2,000 borrowed on Oct. 16, 1905; $1,500 borrowed on Oct. 30, 1905; $1,000 borrowed Nov. 9, 1905; $2,500 borrowed on Dec. 13, 1905, making a total of $7,000; and that on Dec. 13, 1905, Monarch & Porter executed a note to the bank for $10,000 and a mortgage to secure the same; that such indebtedness to the bank was paid as follows: March 25, 1906, from the United States government on account of the February estimate due Monarch & Porter, the sum of

$990.86; on April 25, 1906, on March estimate due Monarch & Porter, $5,647.27; on May 19, 1906, by the check of Monarch & Porter on the Capital State Bank, $761.54, making a total of $7,399.67; and that on the latter date the bank in a letter signed by C. W. Moore, as its president, addressed to the treasurer of the United States, notified the treasurer that the bank claimed nothing further under the power of attorney given by Monarch & Porter, and that all sums due it from Monarch & Porter had been fully paid and satisfied; and on the same date the notes representing the several sums advanced by the bank to Monarch & Porter, as well as the note for $10,000, were indorsed and delivered to the Title Guaranty and Surety Company, and thereafter an assignment of the chattel mortgage given to secure the $10,000 note was made to the Title Guaranty and Surety Company.

It will thus be seen from this stipulation that the indebtedness to the bank was paid by Monarch & Porter; that the Title Guaranty and Surety Company paid no part of such indebtedness. All of the indebtedness was paid from money received by Monarch & Porter directly from the United States government, under their contract, and turned over to the bank, except the sum of $761.54 which was paid by Monarch & Porter by a check upon the Capital State Bank. From what source Monarch & Porter received this latter sum does not appear in the stipulation or elsewhere, but it does appear from this stipulation that all of the money which went to pay and discharge the indebtedness due from Monarch & Porter to the bank was paid out of the funds belonging to Monarch & Porter, and that no part of the payment was made by the Title Guaranty and Surety Company or from any funds by them advanced to Monarch & Porter. When, therefore, the indebtedness due the bank was paid by Monarch & Porter who owed the same, the debt thereby became fully liquidated and extinguished. There was nothing thereafter to assign to the Title Guaranty and Surety Company, and they acquired no right or claim against Monarch & Porter, or the property covered by the mortgage, by reason of the indorse-

ment and transfer of the notes held by the bank or the assignment of the mortgage.

As was said by the supreme court of California in the case of *Moran v. Abbey,* 63 Cal. 56:

"But payment of a promissory note is not a contract; it is performance of the obligation arising out of the promise to pay. Any one of the several parties to a joint contract, or anyone in his behalf and at his request, or with his consent, may perform the obligation; and when performance has been offered or made, and the money accepted, the obligation becomes extinguished. The parties to the contract are no longer bound to each other by the *vinculum legis* of right and duty. The duty being discharged the right ceases to exist; and the contract itself, though preserved in form, is no longer the subject of sale or transfer. When, therefore, the plaintiff, on the request of Abbey and for his benefit, took up the note, the contract was discharged, and the qualified indorsement of it by the payee, three years afterward, was ineffectual as a transfer." (*Wheeler v. Bull,* 131 Cal. 421, 63 Pac. 732.)

A very full and complete discussion of this question may be found in the case of *Binford Admr. v. Adams Admr.,* 104 Ind. 41, 3 N. E. 753, in which the court says:

"There is an important difference between the payment of a note and the purchase of it from the owner. Payment is the discharge of a debt. The purchase of a note is a contract of sale. The sale of a note, in order to be valid, must be made by a buyer to a seller; there must be mutual assent, and there must also be a consideration. Daniel says: 'Payment is not a contract. It is the discharge of a contract in which the party of the first part has a right to demand payment, and the party of the second part has a right to make payment. A sale is altogether different. It is a contract which does not extinguish a bill or note, but continues it in circulation as a valid security against all parties. And it is necessary to constitute a transaction a sale that both parties should then expressly or impliedly agree, the one to sell, and the other to purchase the paper.' "

An examination of the record in this case discloses not only that the money due the bank was paid out of funds due Monarch & Porter from the government, but that the bank did not sell the note and mortgage to the Title Guaranty and Surety Company. The letter of C. W. Moore, president of the bank, addressed to the agent of the Title Guaranty and Surety Company, which was the only statement and agreement on the part of the bank with reference to the payment of the note due the bank from Monarch & Porter, was to the effect that the bank would deliver to the Title Guaranty and Surety Company, upon full payment of the amounts due the bank with interest, without recourse the notes secured by the mortgage and other collateral, provided the same was paid on or before Apr. 30, 1906, "out of the proceeds of government drafts, issued in favor of Monarch & Porter and duly indorsed by them or by deposit by your company for credit of this bank with the Chase National Bank of New York. The amount due us this date is $7,295.19, to which add interest at 10 per cent per annum from this date until paid.''

It will thus be seen that the bank never agreed to sell the notes and mortgage to the Title Guaranty and Surety Company. All the bank did was to agree that if the money was paid out of the funds due the party making the note and obligated to pay the same, upon the happening of such event the bank would transfer and deliver such notes and mortgage to the Title Guaranty and Surety Company. This does not amount to a sale, and shows conclusively that there was no intention upon the part of the bank to sell the notes and mortgage to the Title Guaranty and Surety Company, but on the contract the bank looked to the makers of such note for payment and to the fund upon which the makers had given the bank an order, and out of which such notes and mortgage were to be paid, and out of which the same in fact were paid.

In the case of *Pitts Ellis v. George W. Bashor, ante,* p. 259, 105 Pac. 214, this court discussed a similar state of facts in relation to the payment of a debt secured by a mortgage upon real property and held: "Where B. purchases real estate and

assumes the payment of a mortgage debt thereon as part of the purchase price, and thereafter pays such mortgage, he cannot thereafter assign or have the same assigned to another person as security for the payment of a debt due him.'' So in the case under consideration, when the debt due the bank and secured by the chattel mortgage was paid out of funds belonging to Monarch & Porter, Monarch & Porter could not have the mortgage thereafter assigned to the surety company for the purpose of securing another debt due by Monarch & Porter to the surety company, to the prejudice of a creditor or subsequent mortgagee. The payment was a liquidation and a satisfaction of such indebtedness.

Counsel for appellant, however, contend that while it is true the debt due the bank was paid out of money received by Monarch & Porter from the government, yet inasmuch as the surety company made advances to Monarch & Porter and thereby enabled them to perform their contract with the government, the payment made to the bank was in fact made by the surety company and the surety company should be subrogated to the rights of the bank. This statement of counsel, however, is not wholly correct, as it appears from the record in this case that the bank was also making advances and loans to Monarch & Porter, and it may have been that it was by reason of such advances and loans that Monarch & Porter were enabled to earn the money received by them from the government, and especially is this true in view of the fact that the advances and loans made by the surety company did not begin until about the middle of March, long after the bank had made advances and loans. So, if we apply the principle contended for by the appellant, we must conclude that the bank paid itself the indebtedness due by reason of the fact that it furnished Monarch & Porter the money with which they earned the fund used to pay such bank. It may be stated as a general proposition of law that where a payment is made by one person, who has an interest in protecting property against the enforcement of a claim or who has junior rights to guard, he will be subrogated by equity to the rights of the person whose claim has been paid; but the

facts of this case do not bring it within this rule of law. It was not necessary for the surety company to pay off the mortgage due the bank in order to protect the mortgaged property. Whether the mortgage be held by the bank or the surety company, the property is subject thereto, and in either event the plaintiff's mortgage was the second lien upon such property; and in this connection it may be observed that the plaintiff had an interest in the property mortgaged which must be considered in determining the question of subrogation. It was the plaintiff's right, as the holder of a second mortgage, to have money belonging to the mortgagor and paid on the first mortgage applied in liquidation and satisfaction of such debt. Subrogation is the creature of equity, and will not be permitted where it will work injustice to the rights of those having equal or superior equities. (20 Am. & Eng. Ency. of Law, 204.) And in this case the plaintiff had an equity and it was his right to have the money or property of the mortgagor applied in liquidation of a prior mortgage, so as to protect his lien, and this right in our judgment is superior to the right of a subsequent mortgagee.

If the principle contended for by appellant should be recognized as a legal proposition, then the question of payment becomes one of the most complicated questions left to judicial determination, for if every person who loans money to a debtor, by means of the use of which the debtor is enabled to earn other money or property and the latter is applied in discharge of an indebtedness of the debtor due a person other than the lender, and such circumstances shall be construed into a payment by the lender to the second creditor, then all rules of commercial transactions will have been entirely revolutionized and a new principle in commercial law will have been declared. We are unable to give our sanction to such a proposition.

This brings us to a consideration of the third proposition: "Is the plaintiff estopped by reason of the document or instrument signed by him on May 24, 1906, to claim that his mortgage is a prior lien to that of the $20,000 mortgage held by the surety company?" This instrument, in so far as it is

material here, provides: "Now, therefore, I, the said John Porter, mortgagee, as aforesaid, do hereby stipulate and agree that the mortgage so made to me, March 6, 1906, shall be regarded and held to be secondary, and subject to another certain mortgage made by Monarch & Porter to the Title Guaranty and Surety Company, of Scranton, Pennsylvania, bearing date March 12, 1906." The court found there was no consideration for this agreement and that the plaintiff was not estopped by reason of its execution or provisions. We think the proof clearly supports this finding. No consideration is stated in the document, and in fact it is conceded by counsel for appellant, who was a witness, that the plaintiff received no money or property or any other thing of value for the execution of this document. It is contended, however, that the surety company would not have made any further advances or loans to the firm of Monarch & Porter had it not been for the execution of this instrument. The record, however, discloses that the surety company prior to the execution of this instrument had made a number of loans to the firm of Monarch & Porter, and after the execution of this instrument continued to do the same thing they had previously been doing. It may also be observed that the surety company was under obligations to see that Monarch & Porter safely and fully performed their contract with the government by reason of their having given a bond to that effect; and when they made advances or loans to aid Monarch & Porter to carry out such contract, they were doing no more than they were already obligated to do. They were in no way misled by the signing of such instrument, because they knew from the records that the plaintiff's mortgage was prior to that of the $20,000 mortgage. They in no way changed their position; they parted with nothing they were not already parting with. They were in no way deceived, and as said by this court in the case of *Froman v. Madden,* 13 Ida. 138, 88 Pac. 894: "It is, therefore, clear that she was not deceived nor misled by anything he said. Neither is it shown that he performed any act or did anything that would mislead the defendant, or that was calculated to deceive her or

cause her to part with her property or labor either to her prejudice or to his gain.''

We are therefore forced to the conclusion that the court was correct in concluding that there was no consideration for the document signed by respondent on May 24th, and that the respondent was not estopped by reason thereof to claim that his mortgage was prior to that of the appellant.

This brings us to a consideration of the fourth proposition: Did the court err in not allowing the appellant attorney's fees on the foreclosure of its mortgage? The court found ''that neither the plaintiff nor the defendant, the Title Guaranty and Surety Company, is entitled to recover attorney's fees in this action.'' The only evidence offered by appellant upon the question of attorney's fees was the mortgage itself. The mortgage contained this provision: ''If this mortgage be foreclosed by decree of court, or if it be foreclosed by notice and sale, then counsel fees in the sum of two thousand dollars, which sum is hereby stipulated by the parties hereto as reasonable and proper counsel fees for such foreclosure.''

In this state the validity of a stipulation in a mortgage for an allowance of attorney's fees, in foreclosure proceedings, has been held valid. (*Broadbent v. Brumback,* 2 Ida. 366, 16 Pac. 555; *Warren v. Stoddart,* 6 Ida. 692, 59 Pac. 540; *Jones v. Stoddart,* 8 Ida. 210, 67 Pac. 650.) And it has also been held that to entitle a plaintiff in a foreclosure proceeding to recover attorney's fees, where the same have been stipulated for in the mortgage, the plaintiff must tender evidence upon two propositions: First, that the plaintiff has agreed to pay his counsel a fixed or a reasonable sum for his services; second, the reasonableness of the fee. (Cases above cited.)

To justify the court, then, in allowing attorney's fees upon the foreclosure of a mortgage, where the mortgage contains a stipulation that attorney's fees may be allowed on foreclosure of such mortgage, the plaintiff must also prove that he has agreed to pay his counsel a stipulated or a reasonable fee for his services, and the reasonableness of the fee agreed upon or what is a reasonable fee in such an action. Upon this evidence the court is enabled to find the amount to be allowed in

such proceeding, but without such evidence there is nothing upon which the court can base a finding allowing such fee. In this case, there being no evidence that the appellant had agreed to pay its counsel a fixed or a reasonable fee in such action, and there being no evidence as to what would be a reasonable fee for the services rendered in such action, the court did not err in finding that the appellant was not entitled to recover attorney's fees.

We find no error in the record and the judgment is *affirmed.* Costs awarded to *respondent.*

Sullivan, C. J., and Ailshie, J., concur.

Petition for rehearing denied.