## GROSS et al. v. BUSH TERMINAL CO.
### No. 346.

Circuit Court of Appeals, Second Circuit.
July 10, 1939.

Gross & Keck, and Fred L. Gross, all of Brooklyn, N. Y., in pro. per. and for appellants.

Lowell M. Birrell, of New York City, for appellee.

Before L. HAND, CHASE, and PATTERSON, Circuit Judges.

L. HAND, Circuit Judge.

This appeal is from an order in bankruptcy, granting allowances to the trustee of a second mortgage (which we shall speak of as the mortgagee) and to its attorneys, for services rendered in a reörganization proceeding under § 77B, and for other services. The second mortgage was executed

to secure an issue of bonds held by the public; it contained a clause which authorized the mortgagee to "select and employ * * * suitable agents and attorneys whose reasonable compensation shall be paid to the 'Trustee' by the 'Terminal Company'" (the debtor) "or in default of such payment shall be a charge upon the hereby mortgaged premises." The mortgagee had a similar lien for its own expenses and compensation. On April 1, 1933, a creditors' suit was filed against the debtor and receivers were appointed. The mortgagee thereupon retained Gross and Keck, as its attorneys in that suit. On September 5, 1934, the mortgagee filed a suit against the debtor and its receivers and the mortgagee of the first mortgage, seeking to sequester the debtor's income pendente lite in the interest of the bondholders, and to subject certain shares of stock to the lien of the mortgage. The second part of this suit depended upon the following facts. The debtor had been the owner of all the common shares of a subsidiary (which we may for convenience call the "Buildings Company") 100 in number, which the debtor had mortgaged to the mortgagee. The "Buildings Company" increased its capital to 10,000 shares which were issued to the debtor, and which it asserted to be exempt from the lien of the mortgage. These were the shares which the mortgagee claimed in the suit just mentioned. On November 17, 1934, the debtor filed a voluntary petition in reörganization under § 77B of the Bankruptcy Act, in which Gross and Keck also represented the mortgagee, and after much delay and several unsuccessful efforts, a plan of reörganization was finally prepared which the court approved on April 21, 1937. This plan included the reörganization not only of the debtor, but of the "Buildings Company," which had meanwhile filed its own petition for reörganization on October 1st, 1936. The plan did not affect either the first, or second mortgage in any way except to provide a sinking fund for the second mortgage, which had had none theretofore. All defaults in interest of both mortgages were paid, either during the proceedings or when the plan went into effect; and "preferred claims, if any, to the extent finally allowed" were "to be paid in full in cash." The order approving the plan directed the committees of creditors and shareholders and their attorneys, "and all other persons and counsel to whom the Court may properly make al-

lowances in these proceedings * * * to make on or before June 1, 1937 * * * application for the allowance of such compensation and expenses as they may choose to apply for herein." The mortgagee and its attorneys filed two joint petitions on June 14, 1937, one for services rendered in the creditors' suit, and the other for those in the reörganization. These petitions the bankruptcy judge referred to a special master (along with many other similar petitions of other parties) who took testimony and recommended allowances in all cases except those of the mortgagee and its attorneys, as to which he thought himself disqualified, and which for that reason he referred back without recommendation. The judge made allowances to all the petitioners, including the mortgagee and its attorneys, for all services "rendered and to be rendered * * * in connection with the above entitled proceedings * * * or the Plan of Reörganization, or otherwise, and for which an allowance may be made in this court * * * under the provisions of Section 77B * * * and * * * the sum of $1750 is hereby fixed as the fair and reasonable compensation to" (the mortgagee) "for its services in connection with the administration of such trust, and $10,000 is hereby fixed as the fair and reasonable compensation for the services of Gross and Keck, as counsel to such Trustee * * * rendered and to be rendered * * * in the above entitled proceedings or otherwise". The order was entitled in both the creditors' suit and the reörganization proceeding. The suit to compel the debtor to pledge and deliver to the mortgagee the new shares of the "Building Company" has not been disposed of.

It will have been observed that the allowances covered all services rendered in the creditors' suit, the reörganization proceeding, "or otherwise". The mortgagee and its attorneys protest against this. They say that certainly the court had no power to liquidate any claims not connected with the two insolvency proceedings, and that some of their services were of that kind. They say further that the court had no power to liquidate even their claims for services rendered in the insolvency proceedings, because these were as much secured by the mortgage as the bonds themselves, which the plan did not attempt to affect. Since the consent of the bondholders had not been secured to the plan, their interests could not be touched, and they—

932

the mortgagee and its attorneys—shared the bondholders' immunity. If the court should overrule this objection they insist that the allowances were in any case so inadequate as to exceed any possible discretion of the court; and certainly that it is improper at the present time to liquidate their claims for future services, especially those which should be rendered in the pending suit to subject the shares of the "Building Company" to the mortgage.

A reörganization under subdivision (b) of § 77B, 11 U.S.C.A. § 207(b), may be of all the creditors of the debtor, or only of some "classes" of them. Those "classes" whose interests are substantially modified must consent to the plan by a vote of two thirds of their number; yet even those who do not consent, may nevertheless be disposed of in invitum (subd. (b) (5) in four different ways, each of which gives them, however, the equivalent of what they had before. The parenthesis of subd. (b) (5) contemplates two other "classes" of creditors, those whose "claims * * * will not be affected by the plan" and those for the payment of whose claims "the plan makes provision * * * in cash in full." A plan does not "affect" the claims of creditors when they retain exactly what they had before: the claims of the bondholders in the case at bar are of this first kind. The claims of the mortgagee and its attorneys are of the second kind: they are to be paid "in cash in full". It makes no difference that they were "preferred" by incorporating them into a mortgage; any lawful preference is necessarily some kind of security. Nor does it matter that, although the bonds are not to be "affected", the claims in suit are to be by being paid. The mortgagee and its attorneys do not complain because they are to be paid; they wish to be paid. They only object to submitting their claims to the bankruptcy court for liquidation; and that objection is not sound. Any court, which approves a plan under which a class of claims is to be paid "in cash in full", must have power to decide how much to pay; i. e., to liquidate the claims themselves. It is not obliged to submit that question to another court, as was true in certain situations in a creditors' suit. Hatch v. Morosco Holding Company, 2 Cir., 26 F.2d 247, affirmed Riehle v. Margolies, 279 U.S. 218, 49 S.Ct. 310, 73 L.Ed. 669. The federal jurisdiction in reörganization is exclusive, and powers which Congress has vested in the bankruptcy court that court may exercise without resort to any other court. The plan was therefore proper in providing that "preferred claims, if any, to the extent finally allowed are to be paid in full in cash;" and they are to be "finally allowed" in such fashion as the bankruptcy court shall provide; the claimants have no legally protected interest in recourse to another tribunal.

There remains only the question of the amounts allowed. The chief affirmative contribution to the plan that the attorneys say they made is the sinking fund for the second mortgage bondholders. As is usual in reörganizations other parties claim to have originated this, and its paternity is in doubt; probably a number of parties either suggested it at the same time, or actively furthered it as soon as it was suggested. As for the other services, we can find no evidence that makes the allowance plainly inadequate. It is seldom our custom to disturb the decision of the district court in such matters, and we will not do so here. We do not, however, read the order as preventing the mortgagee and its attorneys from making a claim against the debtor for future services not incident to the reörganization. Such, for example, will be any future services rendered in the suit to subject the common shares of the "Buildings Company" to the lien of the mortgage. We hold that the allowances do not cover such services, any more than they cover services which may be rendered in the future to foreclose the mortgage. They do cover any future services necessary to complete the reörganization; but that is all. Since we so understand the order, it is not necessary for us to modify it.

Order affirmed with costs.