## BUTZEL et al. v. WEBSTER APARTMENTS CO. et al.

## GOTTLIEB et al. v. SAME.

### Nos. 8391, 8392.

Circuit Court of Appeals, Sixth Circuit.

June 4, 1940.

Isadore Levin, of Detroit, Mich., and I. E. Ferguson, of Chicago, Ill. (Butzel, Levin & Winston, of Detroit, Mich., and Gottlieb & Schwartz and Sonnenschein, Berkson, Lautmann, Levinson & Morse, all of Chicago, Ill., on the brief), for appellants.

Harry Platt, of Detroit, Mich. (Herman A. August, of Detroit, Mich., on the brief), for appellees.

Before HICKS, ALLEN, and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

These are appeals from orders in a reorganization proceeding under 77B of the Bankruptcy Act, 48 Stat. 912, 49 Stat. 664, 965, 50 Stat. 622, 11 U.S.C.A. § 207, relating to attorneys' allowances. No. 8391 is an appeal by the law firm of Butzel, Levin & Winston, of Detroit, Michigan. Their aggregate claim is $26,900.49, which includes $15,000 allowed to their clients as attorneys' fees in a decree against the debtor in a mortgage foreclosure in the Circuit Court for the County of Wayne, Michigan, which sum was reduced to $4,000 by the lower court and also $3,900.-49 for services rendered and disbursements made while appellants were attorneys for the mortgagee trustees for the period from June 30, 1931, to August 31, 1933, which latter item the lower court disallowed. It also includes $8,000 for services rendered to the mortgagee trustees from September 1, 1933, to May 4, 1935, which was also reduced to $4,000 by the lower court. These claims were for services rendered prior to the institution of these proceedings.

No. 8392 is an appeal by the law firm of Butzel, Levin & Winston (also appealing in 8391), Gottlieb & Schwartz, and Sonnenschein, Berkson, Lautmann, Levinson & Morse, who claimed $20,000 for services rendered to a first mortgage bondholders' committee in the reorganization proceedings from March 6, 1931, to its conclusion on June 21, 1938. The lower court allowed $12,000.

The debtor, Webster Apartments Company, a Michigan corporation, was indebted on a first trust mortgage in the sum of $1,850,000, dated March 15, 1924. On March 15, 1931, it defaulted, at which time unsubordinated bonds in the aggregate principal amount of $1,674,500 were unpaid and on May 15, 1931, appellants in No. 8391, as attorneys for the mortgagee trustees, filed a bill of foreclosure in the Circuit Court for the County of Wayne, Michigan.

Prior to June 30, 1931, second mortgagees had procured a foreclosure and sold the property subject to the first and on this date the purchaser at this sale agreed that the trustees under the first mortgage could take possession of the property, which consisted of a large apartment hotel in Detroit, Michigan, which they did and continued in possession, operating it until May 4, 1935.

The first mortgage provided in the now important parts, that in case of foreclosure proceedings, "reasonable compensation for the services of the trustees and all costs and reasonably necessary expenses, including all expenses of preparing for trial and trial, reasonable attorneys' and counselors' fees, * * * shall become so much additional indebtedness secured by this indenture."

It also provided that, in the event the property was repossessed by the trustees before foreclosure, the compensation and expenses of trustees in the operation of the mortgaged property, together with reasonable attorneys' fees, should be paid out of the revenue of the property before application of any part of the income to the remaining mortgage indebtedness.

On May 7, 1932, a decree of foreclosure was entered in the Circuit Court of Wayne County, Michigan, wherein it was adjudged, among other things, that there was due and unpaid to the plaintiffs therein, as trustees, for their own benefit, and they had a prior, valid and subsisting lien of $15,000 against all of the mortgaged property and premises for attorneys' fees. There were no further steps taken in the state court after the entry of this decree.

On August 31, 1933, appellants in No. 8391 presented to the trustees under the first mortgage a bill of $3,900.49, balance due for legal services rendered to the trustees and for disbursements made in connection with their operation of the mortgaged property, which they accepted.

On May 4, 1935, the debtor's voluntary petition for reorganization was filed in these proceedings pursuant to Section 77B of the National Bankruptcy Act, which was approved and creditors were required

to file claims. Appellants in No. 8391 filed proof of a secured claim in which they set out the facts heretofore related in reference to the $15,000 and the $3,900.49 and in addition thereto claimed $8,000 for legal services rendered to trustees under the trust mortgage in connection with the operation of the property for the period from September 1, 1933, to May 4, 1935, and detailed therein the services for which their respective charges were made. They insisted they were lien creditors of the estate in the amount of $11,900.49 under the provisions of the trust indenture and, judgment lien creditors in the amount of $15,000.

A plan of reorganization was submitted by the bondholders' committee represented by the appellants as attorneys in No. 8392, which, after amendment, was approved and, as finally adopted and placed in operation, authorized the issuance of a principal amount of $1,004,700 of so-called income bonds by a new corporation to be organized to acquire title to the debtor's property, said bonds to mature in fifteen years from date and to bear interest at the rate of five per cent per annum, if earned, which interest, to the amount of three per cent per annum, was to be cumulative and paid out of earnings.

In addition to the bonds, the new corporation was to issue 22,327 shares of common stock without par value, of which approximately seventy-five per cent was to be issued to the holders of first mortgage bonds and the remaining twenty-five per cent to the stockholders of the old corporation.

The new corporation was organized under the name of Webster-Hall Company, and acquired all the assets of the old in exchange for its bonds and capital stock. The mechanics by which this was accomplished are not material.

Appellants in No. 8392 filed petition for an allowance for compensation in the sum of $20,000 for services rendered to the bondholders' committee in the reorganization proceedings. The creditor claims of the appellants in No. 8391 and the petition for allowances in No. 8392 were referred to a master who, after hearing evidence, filed a report in which he recommended allowances to appellants in No. 8391 of $10,000, divided into $5,000 in lieu of the $15,000 awarded by the decree of the Circuit Court of Wayne County, Michigan, and $5,000 in lieu of the $11,900.49 claimed for

services rendered to the mortgagee trustees and recommended $12,000 in lieu of the $20,000 to appellants in No. 8392.

Appellants and appellee filed exceptions to the master's report. On hearing, the court allowed $4,000 in lieu of the $15,000 and $4,000 in lieu of the $11,400.49 which was a reduction of $2,000 below the master's allowance in No. 8391, and approved the master's allowance in No. 8392, from which order this appeal is prosecuted.

Appellants in No. 8391 insist they had a money judgment for $15,000 rendered by a court of competent jurisdiction prior to the inception of the bankruptcy proceedings and by reason thereof they had a debt of record for which the bankrupt was liable and that the bankruptcy court was without jurisdiction to reduce it and further insist that their claims for $3,900.49 and $8,000, respectively, were contractual obligations and the court should have determined the amount due pursuant to the contract. They further insist that if the court had jurisdiction to determine the reasonableness of their claims for services, it abused its discretion.

The only error relied upon for reversal in No. 8392 is that the court abused its discretion in fixing the allowances.

■ Creditors who have obtained final judgment liens antedating the filing of a debtor's petition are secured creditors within the meaning of the Bankruptcy Act (In re Fay Stocking Company, 6 Cir., 95 F. 2d 961), and it is the duty of the court to so deal with their interest at the time the petition is filed. Glenn v. Hallums, 5 Cir., 80 F.2d 555.

■ It is not an unusual practice to provide in mortgages for the payment of attorneys' fees if there is a default and the mortgagee is required to employ counsel to collect the debt, the validity of such provisions being a matter of local law. Security Mortgage Company v. Powers, 278 U.S. 149, 153, 49 S.Ct. 84, 73 L.Ed. 236. The rule prevails in Michigan that an agreement by a mortgagor to pay a stipulated attorneys' fee on default and foreclosure is contrary to public policy and invalid. Curtis v. Mueller, 184 Mich. 148, 150 N.W. 847; Myer v. Hart, 40 Mich. 517, 29 Am.Rep. 553. However, a reasonable fee may be allowed, measured by the fair value of the services rendered. Security Trust Company v. Solomon, 241 Mich. 52, 216 N. W. 405.

 The decree of the state court was a final judgment. Wurzer v. Geraldine, 268 Mich. 286, 256 N.W. 439; In re Sorenson, 7 Cir., 77 F.2d 166. However, this result, under all circumstances, does not foreclose the power of the district court to examine into the amounts payable thereunder. Under Section 77B, sub. i of the Bankruptcy Act as amended, the court is charged with the duty to determine the reasonable value of the services to the estate. The decree in the state court was not finally consummated. Before any sale took place, its beneficiaries, with the exception of appellants, abandoned it and voluntarily entered these proceedings, participated therein and took an active part in promoting and consummating the plan of reorganization finally approved. The decree of the state court, when fairly interpreted, fixed the award to the appellants for services rendered and to be rendered in that action. Inasmuch as appellants had not finally completed the services in the state court for which they were to be paid, their position is analogous to that of attorneys who had not been paid agreed compensation and whose services, through no fault of theirs, are discontinued during the litigation. In such cases, the rule applies that the measure of recovery is based on the principle of quantum meruit and the attorneys must be paid for the services rendered and the question is how much must be paid and on what basis. In re Pine Block Building Corporation, 7 Cir., 90 F. 2d 238.

 The implied contract arising out of the judgment of the state court having come to an end through no fault of either party, its terms cannot establish the standard for compensation. At the time the decree was entered, the debtor was in straitened financial circumstances and the sale under it was deferred because of a lack of funds to pay non-depositing bondholders. The undisputed facts show that a deficiency judgment would have been uncollectible and the appellants would have had to look solely to the proceeds of the sale of the property for compensation. The decree did not award any money judgment to appellants and did not fix the priority of payment as between them and their clients. The judgment for the fees was not held in trust for appellants by their clients and in the absence of a contract between them, they had no interest in the amount recovered. Rogers v. Kemp Lumber Company, 18 N.M. 300, 137 P. 586, 51 L.R.A.,N.S., 594; Barbee v. Aultman, Miller & Co., 102 Iowa 278, 71 N.W. 235; Scholey v. DeMottos, 18 Wash. 504, 52 P. 242; Porter v. Title Guaranty & S. Company, 17 Idaho 364, 106 P. 299, 27 L.R.A.,N.S., 111.

Appellants "do not complain because they are to be paid; they wish to be paid. They only object to submitting their claims to the bankruptcy court for liquidation; and that objection is not sound. Any court, which approves a plan under which a class of claims is to be paid 'in cash in full', must have power to decide how much to pay; i. e., to liquidate the claims themselves. It is not obliged to submit that question to another court, * * *." Gross v. Bush Terminal Company, 2 Cir., 105 F. 2d 930, 932.

 It follows that the bankruptcy court, being clothed with power and jurisdiction over all cases and controversies between the bankrupt and its creditors for the collection of assets and the ascertainment and liquidation of liens thereon and for the marshaling and disposition of different funds so as to secure the rights of all parties and to effect a due distribution among all creditors, had full power to reduce the amounts allowed in the state court judgment. Shulman et al. v. Wilson-Sheridan Hotel Company, et al., 301 U.S. 172, 174, 57 S.Ct. 680, 81 L.Ed. 986. A fortiori, this power is equally effective to reduce the claims for legal services rendered to the mortgagee trustees and in adjusting these amounts according to principles of equity and good conscience, the court was not violating or impairing contractual obligations. Pepper v. Litton, 308 U.S. 295, 305, 60 S.Ct. 238, 84 L.Ed. 281; Hotz v. Federal Reserve Bank, 8 Cir., 108 F.2d 216; Gross v. Bush Terminal Company, 2 Cir., 105 F.2d 930; Kalb v. Feuerstein, 308 U.S. 433, 439, 60 S.Ct. 343, 84 L.Ed. 370; Union Guardian Trust Company v. Colwood Company, 6 Cir., 111 F.2d 671, decided April 12, 1940.

 There remains only the question of the reasonableness of the amounts allowed. The special master recommended an aggregate allowance of $62,668.78 for fees of counsel, services of trustees for bondholders and their depositories. The court, on exceptions, reduced the aggregate to $58,500. Included therein was $4,000 to appellants in No. 8391 for legal services in the state foreclosure proceedings. The record shows the decree was pursuant to

default. The sum and substance of the work done in that action was the filing of a petition and the preparation of a decree. There was also allowed $4,000 for legal services rendered to the trustees of the mortgage bondholders in the operation of the hotel property.

The special master disallowed $3,900.49 for services rendered to the trustees prior to September 1, 1933, on the ground they had no connection with the plan of reorganization. He allowed $5,000 which, on exceptions, was reduced to $4,000, for services rendered subsequent to September 1, 1933, to the date of filing the debtor's petition on the ground that they were in connection with the reorganization. On exceptions, so far as the record shows, the court did not pass on the legal question raised by appellants that they were entitled to claim for services rendered prior to September 1, 1933, and had a lien on the income accruing to the mortgagee trustees because they had rendered a bill therefor prior to the institution of these proceedings. We find it unnecessary to pass on this issue because the error, if any, was harmless. In re Maki, 6 Cir., 18 F.2d 89.

The general character of the services rendered to the trustees during the whole period was substantially the same and is not susceptible to apportionment as to time or dates. There were legal questions arising from day to day relating to the management and operation of the hotel and also to the delinquent tax liability of the debtor to the State of Michigan and its subdivisions of government. The claim for taxes amounted to approximately $100,000 and resulted in litigation which was finally settled to the distinct advantage of the estate. We find no abuse of judicial discretion on the part of the lower court in the determination of the allowances in appeal No. 8391.

It is unnecessary to set out in detail the facts relating to the services rendered by appellants in connection with the institution and consummation of the plan of reorganization. Suffice it to say that the plan was of the ordinary type and presented no unusually difficult legal questions and there was no controversy among the creditors about it. Most of the creditors were of the same class and there was involved but one piece of property and one type of business. The situation herein is totally different from that presented in Union Guardian Trust Co. v. Colwood Co., supra. While this court in the cited case pointed out that the findings of the state court created a prima facie presumption of the approximate propriety of the allowance, it did not hold that the District Court lacks jurisdiction to exercise its discretion in providing for reasonable allowances. In fact the contrary holding is made in that case, under Section 77B, sub. i. The record in the instant case does not present complicated legal situations nor facts in any way comparable to those which existed in Union Guardian Trust Co. v. Colwood Co., supra.

Where the question of allowances for legal services is involved in reorganization proceedings under the National Bankruptcy Act, each case has its own peculiar facts and the trial court may exercise its sound judicial discretion in making such allowances based thereon. Attorneys for interested groups in such proceedings are not, as a matter of right, entitled to have the full value of their services paid by the debtor. It is the duty of the court to avoid "vicarious generosity" in the matter of attorneys' fees. In re Gilbert, 276 U.S. 294, 48 S.Ct. 309, 72 L.Ed. 580.

The Bankruptcy Statute deals with the affairs of corporations in financial difficulties and proceedings under it should be economically administered consistent with its purpose. Callaghan v. Reconstruction Finance Corporation, 297 U.S. 464, 56 S.Ct. 519, 80 L.Ed. 804. This policy applies to all claims presented for services or expenses in connection with the administration of the estate. Realty Associates Securities Corporation v. O'Connor, 295 U.S. 295, 55 S.Ct. 663, 79 L.Ed. 1446. We find no abuse of judicial discretion on the part of the lower court in the determination of the allowances in appeal No. 8392.

The special master heard all the testimony in support of appellant's claims and the court again considered the facts on exceptions. We cannot say from the evidence that the lower court ignored any of the essential factors in making the allowances (In re Detroit International Bridge Company, 6 Cir., 111 F.2d 235, decided April 5, 1940) or reached a result in manifest disregard of the rights of appellants. In re Standard Gas & Electric Co., 3 Cir., 106 F.2d 215; In re Irving-Austin Bldg. Corp., 7 Cir., 100 F.2d 574.

The decrees of the District Court are affirmed.