CURTIS *v.* MUELLER.

1. MORTGAGES — TRUST DEEDS — FORECLOSURE — CANCELLATION OF INSTRUMENT.

Complainant exchanged his farm for property owned by the defendants in Chicago. Both properties were subject to mortgages. As a part of the consideration defendants executed promissory notes for one thousand dollars payable monthly. At the end of six years, defendants having paid upwards of seven hundred dollars, complainants filed a bill to foreclose the trust mortgage which had been executed as a part of the transaction to secure the payment and performance of the exchange contract. Defendants claimed that they executed the trust instrument, if at all, in ignorance of its contents; that the attorneys conspired together with complainants to defraud them and asked that the court cancel the trust deed. There was evidence tending to support complainants' claim, on review of which, *held*, that the trust deed was understandingly executed and that defendants were not entitled to the relief prayed.

2. FORECLOSURE OF MORTGAGES — CONTRACTS — VALIDITY—STIPULATION FOR ATTORNEY FEE.

The courts of Michigan will decline to enforce a provision in a mortgage executed in the State of Illinois providing and stipulating for a solicitor's fee of one hundred dollars if foreclosure should occur, provisions of such nature being held by the courts of this State to be contrary to public policy and therefore unenforceable.

3. INTERNATIONAL LAW — CONFLICT OF LAWS — ATTORNEY FEES— MORTGAGES.

Although, as a general rule, contracts valid in the State in which they are made are valid in the courts of any other State or country, contract provisions, which are in violation of public policy of the State in which the proceedings are commenced, are considered to be an exception to the general rule.

Appeal from Van Buren; Des Voignes, J. Sub-

mitted January 8, 1914. (Docket No. 16.) Decided January 29, 1915.

Bill by John Curtis against Charles J. Mueller and another to foreclose a trust deed. From a decree for defendants, complainant appeals. Reversed.

*David Anderson,* for appellant.

*T. J. Cavanaugh* and *L. J. Lewis,* for appellees.

BIRD, J. In May, 1905, defendants exchanged their "flat" property in Chicago, for complainant's farm in Van Buren county. Before the exchange was made, each inspected the other's property. The parties met in the office of B. F. Mitchell, a Chicago lawyer, where some of the papers were made and the deal finally closed. Both sides were represented by counsel. Both properties were conveyed subject to mortgage. In addition to the $600 mortgage on the farm assumed by defendants, they executed 100 promissory notes of $10 each, payable monthly to Mitchell as a creditor of complainant. These notes were afterwards indorsed to complainant. To secure the payment of these notes, it is claimed a mortgage or trust deed was at the same time executed, acknowledged, and afterwards recorded. Payment of the notes was regularly made for nearly six years, and until 70 of them had been paid, when defendants claim they discovered for the first time the existence of the trust deed. In reply to complainant's bill to foreclose the lien, the defendants assert that their signatures to the trust deed are forgeries, but that, if their signatures are genuine, they were fraudulently induced to sign it without knowing or intending to do so. They also charge that complainant and the attorneys who represented the parties conspired to defraud them in the deal, and they pray for affirmative relief. The chancellor who heard the case found there was no lien, but re-

fused to grant defendants any other relief. Complainant alone has appealed from the decree.

Upon the hearing complainant produced the trust deed, which appeared to be executed and duly acknowledged by defendants before a notary public. Complainant testified that he saw defendants sign it, and Albert Pudewa, the attorney who acted for the defendants on that occasion, testified that he explained the trust deed to defendants and saw them sign it. Three witnesses who qualified as experts on signatures gave it as their opinion that the signatures on the trust deed were the same as those on the notes. Upon the offer of defendants, a large amount of testimony was taken bearing upon the relative value of the two pieces of property, and counsel figure out that, while complainant received equities in the Chicago property worth upwards of $5,000, the defendants received little or no equity in the farm property.

The evidence of relative value is not very helpful in determining whether there was a lien created to secure the payment of the notes. If defendants were denying that the notes, as well as the trust deed, were genuine, such evidence might have some bearing on the question as to whether complainant did not receive full value for his property, independent of the additional $1,000. But there is no such claim. The defendants concede that the $1,000 item was talked over, and that they consented to it, as a part of the consideration for the farm. They admit they signed the notes and afterward paid 70 of them. Under these concessions, we can see little or no relevancy in the testimony of relative values.

We have, then, the testimony of complainant and Mr. Pudewa that the trust deed was signed by defendants in their presence. On the other hand, we have the testimony of defendants that they did not sign it—at least knowingly. If the question were to

turn on this testimony alone, it perhaps might be said that the complainant had failed to discharge the burden of proof which rested upon him, but when we add to it the testimony of the experts and the force of the official certificate of Susie Garrett, the notary public, and consider that in sales of real estate it is usual for vendors to demand, and vendees to consent to liens for unpaid purchase price, we are carried to the conclusion that complainant has discharged the burden of proof and established his case. To hold that a lien was agreed upon will not increase the indebtedness, and, inasmuch as the admitted debt is for purchase money, no radical change will occur in the legal situation, as an equitable lien would doubtless arise in favor of complainant for the balance of the purchase money. *Carroll* v. *Van Rensselaer,.* Har. (Mich.) 225; *Dunton* v. *Outhouse,* 64 Mich. 425 (31 N. W. 411).

The charge that a conspiracy existed between complainant, Mitchell, and Pudewa to defraud defendants out of the $1,000 evidenced by the notes is not sustained by the evidence. It has little, aside from suspicion, to support it, and we think that, so far as the record discloses, the attack upon the professional conduct of Mr. Pudewa was unwarranted. Nothing appears, aside from insinuations and suspicions, to show that Mr. Pudewa was in any way disloyal to his clients.

The trust deed provides for a reasonable attorney fee in the event of foreclosure, whether in law or equity, and stipulates that $100 is a reasonable fee. The question now arises whether the courts of Michigan will enforce this provision. Such provisions have been frequently declared by this court to be against public policy, and that they will be enforced only when permitted by statute or rules of court. *Bullock* v. *Taylor,* 39 Mich. 137 (33 Am. Rep. 356) ; *Kittermas-*

*ter* v. *Brossard,* 105 Mich. 219 (63 N. W. 75, 55 Am. St. Rep. 437, and cases).

The real question, however, is whether a contract made in the State of Illinois and valid there will be enforced by the courts of Michigan, notwithstanding that in the latter State its enforcement would be against public policy. It is not made quite clear by the record whether such a stipulation is valid in the State of Illinois, but, assuming that it is, our conclusion is that the stipulation is not enforceable in the courts of this State.

While the general rule is that a contract valid where made is valid in the courts of any other country or State where it is sought to be enforced, there are exceptions to the rule, and one of them is where the contract violates the public policy of the State of the forum. 9 Cyc. p. 674; *Seamans, Receiver, etc.,* v. *Temple Co.,* 105 Mich. 400 (63 N. W. 408, 28 L. R. A. 430, 55 Am. St. Rep. 457) ; *Johnston* v. *Rogers,* 19 Ky. Law Rep. 1272 (43 S. W. 234).

By reason of the views herein expressed, the decree of the trial court will be reversed, and one entered providing for the foreclosure of complainant's lien for the unpaid portion of the notes. The complainant will recover his costs in this court.

BROOKE, C. J., and MCALVAY, KUHN, STONE, OS-TRANDER, MOORE, and STEERE, JJ., concurred.