240 F.2d 546
 Randall J. LE BOEUF, Jr., Horace R. Lamb, Adrian L. Leiby,
Chauncey P. Williams, Jr., John A. Brough, Craigh Leonard,
James O'Malley, Jr., John L. Grose and Homer Crawford,
co-partners engaged in the practice of law under the firm
name and style of Le-Boeuf, Lamb & Leiby, Appellants,
v.
Carl J. AUSTRIAN, Surviving Trustee of Central States
Electric Corporation, a corporation, Debtor, Appellee.
 No. 7304.
 United States Court of Appeals Fourth Circuit.
 Argued Nov. 26, 1956.
Decided Jan. 7, 1957.
 
 1
 Horace R. Lamb, New York City (Bremner, Parker, Neal, Harris & Williams, W. Gibson Harris, Richmond, Va., and Alfred E. Froh, New York City, on the brief), for appellants.
 
 
 2
 Carl J. Austrian, New York City (Austrian, Lance & Stewart, Saul J. Lance and Melvin Kraft, New York City, on the brief), for appellee.
 
 
 3
 David Ferber, Asst. Gen. Counsel, Washington, D.C. (Thomas G. Meeker, Gen. Counsel Washington, D.C., and Arthur Blasberg, Jr., Atty. Securities and Exchange Commission, Washington, D.C., on the brief), for Securities and Exchange Commission.
 
 
 4
 Before PARKER, Chief Judge, SOPER, Circuit Judge, and CHESNUT, District Judge.
 
 
 5
 CHESNUT, District Judge.
 
 
 6
 In 1942 the Central States Electric Corporation, a Virginia corporation, filed a petition in the United States District Court for the Eastern District of Virginia, for reorganization under the provisions of Chapter 10 of the Bankruptcy Act, 11 U.S.C.A. 501 et seq. The District Judge approved the petition and assumed jurisdiction and appointed Trustees. Later in 1944 in the course of administration the court made an order authorizing the Trustees to institute suit against certain officers and directors, and Harrison Williams, the majority stockholder of the corporation, for an accounting and recovery of damages for alleged breach of their duties to the corporation. In 1945 the Trustees filed the suit in the District Court of the United States for the Southern District of New York. Freeman and Fogarty were two of the directors so sued. After long litigation, in 1952 the suit against them finally failed on account of limitations. In December 1955 the appellants in this case, Randall J. LeBoeuf, Jr., Horace R. Lamb and others, who had acted as counsel for Freeman and Fogarty, filed a petition in the bankruptcy court, as assignees of Freeman and Fogarty and individually in their own right as counsel, for the allowance of fees and expenses in the amount of $31,185.53. After hearing, the District Judge dismissed the petition and this appeal has resulted.
 
 
 7
 At the outset, we note the contention of the appellee, the present Trustee, that the appeal was not taken as a matter of right but only if allowed in its discretion by this court, as provided in section 250 of Chapter 10 of the Bankruptcy Act, 11 U.S.C.A. § 650, as construed by the Supreme Court in Dickinson Industrial Site v. Cowan, 1940, 309 U.S. 382, 60 S.Ct. 595, 84 L.Ed. 819. The appellants contend, however, that as their petition was dismissed and involved a claim asserted by them under a New York statute, the appeal is a matter of right and not merely discretionary. We find it unnecessary to resolve this conflict because, to the extent that the appeal is only discretionary, we think it should be allowed. Accordingly we allow the appeal and proceed to the consideration of its merits.
 
 
 8
 The order of the Reorganization Court which authorized the suit by the Trustees resulted only after litigation and was succeeded by long protracted litigation. A brief summary of all this will furnish the background for the question presented on the present appeal.
 
 
 9
 The Trustees originally appointed, after conducting an investigation under section 167 of Chapter 10, 11 U.S.C.A. § 567, reported to the Judge that the investigation indicated misconduct and mismanagement by officers and directors of the corporation but recommended against the institution of suits by reason of anticipated expense to be incurred and possible or probable successful defense based on limitations. The Judge approved the report and accordingly, then declined to authorize the suit; but a number of interested security holders appealed the order which was reversed by the Court of Appeals for the Fourth Circuit, Committee for Holders, etc., v. Kent, 1944, 143 F.2d 684. In the opinion it was noted that between 1929 and 1943 the assets of the corporation had decreased from the sum of $350,000,000 to about $11,000,000. Shortly thereafter the Trustees originally appointed, retired, new Trustees were appointed and, after further investigation recommended that suit be brought and the Judge authorized institution of suit against the officers and directors and Harrison Williams, the majority stockholder of the corporation.
 
 
 10
 In 1945 the new Trustees filed a suit in equity for an accounting and damages against the directors, Freeman and Fogarty, Williams and others. The suit was evidently instituted in the United States District Court for the Southern District of New York where personal service could be obtained upon the defendants. The complaint did not allege diversity of citizenship but was a suit on equitable principles for an accounting and damages authorized by the Bankruptcy Act, thus presenting a federal question as the basis for jurisdiction in the federal court in New York. The defendants moved to dismiss the case for lack of jurisdiction and the District Judge so ordered. Austrian v. Williams, D.C., 67 F.Supp. 223. But on appeal the order was reversed by the Court of Appeals for the Second Circuit, Austrian v. Williams, 159 F.2d 67, and the case was remanded to the District Court for further proceedings. This order of the Second Circuit was affirmed by the Supreme Court in Williams v. Austrian, 331 U.S. 642, 67 S.Ct. 1443, 91 L.Ed. 1718.
 
 
 11
 On the remand the District Court after a lengthy trial, determined with respect to Freeman and Fogarty that the evidence did not sustain the charges of misconduct against them in a number of separate instances alleged, but did with respect to three others, and that a decree against Freeman in the amount of $593,693.44, plus interest and against Fogarty in the amount of $748,122.24 plus interest, would be justified except for their plea of the statute of limitations which the District Judge found was a legal bar to their liability as they had retired as directors of the corporation more than ten years prior to the institution of the suit. Austrian v. Williams, D.C., 103 F.Supp. 64, at pages 92, 96, 97, and 101. In his opinion the District Judge found a much larger liability against the defendant, Williams, and held that as to him the defense of the statute of limitations was not good because, in his opinion, the alleged misconduct was not discovered until shortly before the institution of the suit. Freeman and Fogarty did not appeal this decision, nor did the Trustees. But on appeal taken by Williams, the decrees of the District Court were reversed on the ground that the case against Williams was barred by the ten-year period of the New York statute of limitations and that there was error on the part of the District Judge in holding that the statute did not begin to run against Williams until the discovery of the misconduct because the judicial decisions of the State of New York regarding the ten-year statute of limitations were inconsistent with the tolling of the statute until the discovery of the misconduct. Austrian v. Williams, 2 Cir., 198 F.2d 697. The Trustees' petition for certiorari was denied by the Supreme Court, Dec. 1952, 344 U.S. 909, 73 S.Ct. 328, 97 L.Ed. 701.
 
 
 12
 The suit against Freeman and Fogarty having been finally ended, they applied to the District Judge in New York for an allowance for expenses in their successful defense of the suit against them, basing their application on the provisions of §§ 63-68 of Art. 6-A of the General Corporation Law of New York, McK.Consol. Laws, c. 23. It appears that they have paid $25,000 counsel fees. The Trustees opposed the application but after hearing, the District Judge made an order allowing the petitioners the sum of $31,185.53, but providing that the enforcement of the order should be made only by the Reorganization Court in Virginia. The Trustees appealed from this order to the Second Circuit, where it was reversed in an opinion by Judge Harlan (now Justice Harlan of the Supreme Court), on the ground that such an application must be made to and determined only by the Reorganization Court in Virginia. Austrian v. Williams, 1954, 216 F.2d 278, certiorari denied 348 U.S. 953, 75 S.Ct. 441, 99 L.Ed. 744. The reversal was without prejudice to the right of the petitioners to present their application to the Reorganization Court in Virginia. Accordingly in December 1955, application was so made to the Virginia Court and was opposed by the Trustees and the Securities and Exchange Commission, and after hearing, District Judge Hutcheson dismissed the petition with a short opinion in which he held that authority, if any, to grant the allowance must be found in the provisions of Chapter 10 and could not be based upon Article 6-A of the New York Corporation Law; and that the allowance was not authorized by the provisions of Chapter 10 because the services for which compensation was asked were not of benefit to the assets of the corporation and made no contribution to the reorganization itself. It may also be noted that during the long period of more than ten years since the filing of the petition in 1942 by reason of economic and other conditions not necessary to be here noted, the assets of the corporation have increased to about $38,000,000, but still were insufficient to fully satisfy preferred stockholders or provide for the common stock. And in the meantime the plan of reorganization has been approved by the District Court and by the Fourth Circuit Court of Appeals and has been consummated. See In re Central States Electric Corp., 112 F.Supp. 281; Central States Electric Corp. v. Austrian, 183 F.2d 879; Chase v. Austrian, 189 F.2d 555.
 
 
 13
 Coming now to consideration of the particular point presented by the instant appeal, we find that the primary and most stressed contention of the appellants is that it was entitled to have the allowance made under the provisions of the New York statute above referred to which they contend created a substantive State right applicable to and controlling in the Reorganization Court. In the alternative they also contend that if this is not so, then in any event the allowance should have been granted by the District Judge under the principles of equity prevailing in bankruptcy and would be justified by certain specified sections of Chapter 10, which we will later consider in more detail.
 
 
 14
 In support of their primary contention appellants rely principally upon the opinion of the New York District Judge in making the allowance to them. Austrian v. Williams, D.C., 120 F.Supp. 900. In that case the District Judge held that the New York statute created a substantive State right which was enforceable in bankruptcy and that as it was mandatory in its terms as he construed it, he felt obliged to make the allowance even though he intimated that if the matter had been discretionary he might not have done so in view of his finding of facts to the effect that the defendants would have been held liable in very large sums except for their successful defense based on the statute of limitations. The New York statute is to be found in Articles 6, 6-A of the New York General Corporation Law, sections 60-68. Section 60 authorizes an action against directors and officers of a corporation to compel them to account for official misconduct and to pay damages therefor. Section 61 provides that such an action may be brought by the Attorney General or by a creditor, receiver or trustee in bankruptcy. Section 64 provides that a director so sued 'shall be entitled to have his reasonable expenses, including attorneys' fees * * * assessed against the corporation * * * upon court order * * * except in relation to matters as to which it shall be adjudged in such action, suit or proceeding that such officer, director or employee is liable for negligence or misconduct in the performance of his duties.' Section 67 provides that 'if * * * the court shall find that the applicant * * * was successful in whole or in part * * * the court shall grant such application in such amount as it shall find to be reasonable, and shall make an order directing the corporation to pay to the applicant the amount awarded; provided, however, that no award of indemnity or assessment of expenses shall be made in any case where it shall appear (1) that the law of the state of incorporation of the corporation prohibits such indemnity or assessment, or * * *.' Section 68 provides that sections 64 and 67 shall apply to an application 'made to a court in this state in any of the following cases: (a) when the corporation against whom the application is made * * * is a domestic corporation or a corporation doing business in this state; (b) when such expenses were incurred in an action or proceeding maintained in a court in this state; (c) when the application is made by a resident of this state and the director, officer or employee was a resident of this state at the time of the accrual of the alleged cause of action asserted in the litigation in which such expenses were incurred.'
 
 
 15
 While the phraseology used in these sections of the New York General Corporation Law seem to have relation particularly to actions in the State Courts of New York, we may assume that they would be applicable also to suits in the federal court in New York if the jurisdiction were based solely on diversity of citizenship. See Cohen v. Beneficial Industrial Loan Corporation, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528. But it is importantly to be noted that the action brought against the directors in the federal court in New York was not based on diversity of citizenship at all but was an action based on the general principles of jurisprudence and it was finally established by long litigation that the jurisdiction of the District Court in New York was controlled by federal law and not be diversity of citizenship. Furthermore the substantive right of action was in no way based on the authority of the particular New York statute which indeed in its fundamental aspects is merely a reflection but not a creation of the substantive equitable rights contained in equity jurisprudence.
 
 
 16
 In the opinion of the District Judge in the New York case it appears that his principal reason for holding that this New York statute was applicable to and controlling in the matter of the application by petitioners flowed from his interpretation of the reasoning of the Second Circuit in the case of Austrian v. Williams, 198 F.2d 697, in which the Court of Appeals reversed the decree of the District Court holding that Williams, one of the defendants, was not saved by the statute of limitations; but that the statute was applicable and a bar to the action against him by reason of the separate ten-year New York statute of limitations, Civil Practice Act, § 53, as applied in the judicial decisions of the New York Court. The reasoning of the District Judge in the matter of the subsequent application for allowance of expenses was to the effect that as the Court of Appeals had applied the New York statute of limitations in upholding the defense of limitations, he felt that by the same reasoning the other New York statute, that is sections 60-68 of the General Corporation Law of the State of New York, must also be applied in the matter of the application for expenses. However, it appears that the holding of the Court of Appeals was based on a particular limitation statute in the Bankruptcy Act, that is section 11, sub. e of the original Bankruptcy Act as added in 1938, 11 U.S.C.A. § 29, sub. e. Section 11, sub. e now provides:
 
 
 17
 ' § 29. Suits by and against bankrupts
 
 
 18
 * * *
 
 
 19
 * * *
 
 
 20
 '(e) A receiver of trustee may, within two years subsequent to the date of adjudication or within such further period of time as the Federal or State law may permit, institute proceedings in behalf of the estate upon any claim against which the period of limitation fixed by Federal or State law had not expired at the time of the filing of the petition in bankruptcy. * * *'
 
 
 21
 And this was made even plainer in the opinion of the Second Circuit by Circuit Judge (now Justice) Harlan, reversing the allowance made by the District Judge. Austrian v. Williams, 216 F.2d 278, certiorari denied 348 U.S. 953, 75 S.Ct. 441, 99 L.Ed. 744. On the question now under discussion it is important to note that the New York ten-year statute of limitations is an entirely separate statute from Article 6-A of the New York General Corporation Law. The reason that the New York limitation statute was applied was based on section 11, sub. e of the Bankruptcy Act which provided that the action might be brought within the time allowed by any applicable federal or State law; and the reason for applying the State law of New York as to limitations was because it was the law of the forum which was made applicable by the doctrine of the conflict of laws as the Central States was a Virginia corporation.
 
 
 22
 The appellants now strongly contend that apart from the reasons given in the opinion of the New York District Judge who made the allowance under the New York statute, and the opinion of the Second Circuit which reversed the order, that the New York statute is controlling in the case because it creates a substantive State right which is not contrary to but consistent with Chapter 10. The chief support for this contention is thought to be found in Cohen v. Beneficial Industrial Loan Corporation, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528. But that was a diversity case where, under the principle of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, the State law was obligatory; while in the present case the jurisdiction of the New York District Court was not founded on the diversity jurisdiction but on federal bankruptcy law. This distinction is well illustrated in Fielding v. Allen, 2 Cir., 1950, 181 F.2d 163 certiorari denied Ogden Corp. v. Fielding, 340 U.S. 817, 71 S.Ct. 46, 95 L.Ed. 600, where, in a stockholders derivative suit it was held that to the extent the case was based on federal law and not diversity, this New York statute was not applicable.
 
 
 23
 We cannot agree with the appellants' contention. The New York litigation stemmed from an order of the Reorganization Court to institute the action. As previously noted, the sole reason for bringing the action in New York was due to the accidental fact that the defendants could there be personally served. The Bankruptcy Act is intended to be uniform throughout the States except to the extent that its own provisions are to the contrary, as, for instance, where local State property rights are involved. We think it contrary to the manifest policy of Chapter 10 to subject and hamper its provisions by a State statute which would authorize awarding fees and expenses to defendants sued for recovery of assets of the corporation whether the suits are successful or not. Of course such suits not based on probable cause should not be authorized by the Reorganization Judge and cannot be instituted without his order of approval. But section 167 of Chapter 10, 11 U.S.C.A. § 567, imposes the duties on the reorganization trustee to investigate and report to the Judge any facts pertaining to misconduct or mismanagement in any cause of action available to the estate. Even more importantly, it was the purpose of Chapter 10 to preserve and conserve the estate for the benefit of creditors and stockholders and to that end to reasonably minimize the expenses of administration. More particularly, as later pointed out, Chapter 10 contains several specific provisions with respect to what allowances for services and expenses may be made and to whom they may be made. As the determination of such allowance is committed entirely to the judgment of the Reorganization Court, it would be quite inconsistent with this important policy of Chapter 10 to subject the judicial discretion of the Reorganization Judge to the absolute requirements of a particular State statute which could not possibly come into play except for the accidental fact that the defendants sued were subject to personal service only within the particular federal district which, in this case, was the Southern District of New York. As to the manifest object and policy of Chapter 10 see Brown v. Gerdes, 321 U.S. 178, 64 S.Ct. 487, 88 L.Ed. 659; Leiman v. Guttman, 336 U.S. 1, 69 S.Ct. 371, 93 L.Ed. 453; Callaghan v. Reconstruction Finance Corporation, 297 U.S. 464, 468-469, 56 S.Ct. 519, 80 L.Ed. 804.
 
 
 24
 We therefore hold in agreement with the Reorganization Judge that the New York statute now so strongly relied upon by the appellants is not controlling with respect to the appellants' petition for allowance. On the contrary we hold that whether the allowances can or should be made must depend upon the particular provisions of Chapter 10 applicable to the case.
 
 
 25
 The sections relied upon by the appellants, and we think the only ones that need be considered, are sections 221(4), 241(3), 242 and 243 of Chapter 10, 11 U.S.C.A. §§ 621(4), 641(3), 642 and 643. They will be found set out at length in the margin.[1]
 
 
 26
 Section 221 states the conditions requisite for confirmation of a reorganization plan. Among them, in subsection (4), is the requirement that all payments made or promised by the debtor incident to the reorganization have been fully disclosed to the Judge and are reasonable or, if to be later fixed, will be subject to his approval. It does not appear that the reorganization plan in this case made any promise or provision for the compensation now asked by the appellants.
 
 
 27
 Section 241 provides that the Judge may allow reimbursement and reasonable compensation for services rendered and reimbursement for costs and expenses incurred by a referee, a special master, the trustee and other officers and attorneys or any of them; by the attorneys for the debtor and the attorneys for the petitioning creditors. Clearly this section does not authorize the allowance now asked.
 
 
 28
 Section 242 also authorizes the Judge to allow reasonable compensation for services and reimbursement for proper costs and expenses in connection with the plan, by indenture trustees, depositaries, reorganization managers and committees, or representatives of creditors or stockholders, and 'by any other parties in interest except the Securities and Exchange Commission and (3) by the attorneys or agents of any of the foregoing.' We think it cannot be said that Freeman and Fogarty were parties in interest in connection with the plan or reorganization. Their only interests were adverse to the estate.
 
 
 29
 Section 243 further provides for compensation and reimbursement to creditors and stockholders and the attorneys for any of them in connection with the judicial consideration of the plan, whether for or against it, or in connection with the administration of the estate; but adds that 'in fixing any such allowances, the judge shall give consideration only to the services which contributed to the plan confirmed or to the refusal of confirmation of a plan, or which were beneficial in the administration of the estate, and to the proper costs and expenses incidental thereto.' Of course the appellants were neither creditors nor stockholders nor attorneys for creditors or stockholders, and therefore this section furnishes no authority for the allowance requested.
 
 
 30
 We do not find that these several sections, considered either singly or collectively, give authority for the allowances here requested. It is to be borne in mind that the main purpose of Chapter 10 is to rehabilitate a financially distressed corporation; and to accomplish this it is obviously important, if not necessary, to conserve its assets and so far as reasonably possible to minimize the expenses of reorganization. The long litigation which has previously occurred here and the compensation now requested for services and expenses resulted from an effort based on probable grounds to recover assets for the corporation, or damages for loss of such assets. The recovery failed by reason only of the successful defense of limitations, as to a very large amount of damages sought. The litigation was throughout a purely adversary one. Freeman and Fogarty had no interest either in opposition to or in the success of the reorganization plan. They were not parties in interest in connection with the reorganization.
 
 
 31
 We may also take notice of the well known fact that since the enactment of 77B of the Bankruptcy Act, 11 U.S.C.A. 207 and shortly thereafter the enactment of Chapter 10, there have been numerous judicial proceedings for reorganization of distressed corporations, in practically all of which there have been requests for allowances for services by parties in interest, or their attorneys; but we cannot recall any instance, nor has any been called to our attention, where an allowance has been made to persons or their attorneys not interested in or contributing in any way to the plan but holding only interests adverse to the assets of the corporation, and whose services have in no way been beneficial in working out the plan for reorganization, as in this case.
 
 
 32
 In the one reported case that we have noted, similar to the present, the court refused to make an allowance of expenses, under section 77B, to directors who had been sued in New York for alleged dereliction of duties. In the Matter of Pressed Steel Car Co. of New Jersey, D.C.W.D.Pa.1937, 33 Am.Bankr.Rep.N.S., 296, 305.
 
 
 33
 In the appellants' reply brief reliance is based on In re Granada Apartments, Inc. (City Nat. Bank & Trust Co. of Chicago v. Granada Apartments Hotel Corp.) 7 Cir., 1946, 155 F.2d 882, which the appellants think supports their contention that the District Judge should have made the allowance to them. But we find the case clearly distinguishable. In that case the Granada Apartments was in reorganization. A substantial part of its assets was held by an Indenture Trustee under mortgage for security of bonds issued. The Indenture Trustee had foreclosed the property in the State Court in Illinois and had been given a decree for the debt secured and in addition, fees to the Trustee and its attorneys. The Indenture Trustee filed a claim in the bankruptcy case for these amounts. The reorganization Trustee, however, challenged the claim and filed a petition undertaking to surcharge the Indenture Trustee on various grounds. The controversy was not heard summarily but by a plenary proceeding. The Indenture Trustee prevailed against the attempted surcharge. It made claim for its reasonable expenses for successfully defending itself with respect to its duties as Indenture Trustee. Under the indenture it had the contractual right to deduct from the property or funds in its possession such expenses. The holding in the case was, therefore, not inconsistent with the specific provisions of Chapter 10 but illustrates only the well established equity doctrine that a trustee in possession is entitled to be allowed from the fund in his possession expenses incurred in defending the trust committed to its charge, including reasonable compensation for services and expenses. See also Woods v. City Nat. Bank & Trust Co., 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820.
 
 
 34
 We conclude that the order appealed from should be and is
 
 
 35
 Affirmed.
 
 
 
 [1]
 ' § 621. Confirmation by court
 'The judge shall confirm a plan if satisfied that--
 '(1) the provisions of subchapter VII, section 599, and subchapter X of this chapter have been complied with;
 '(2) the plan is fair and equitable, and feasible;
 '(3) the proposal of the plan and its acceptance are in good faith and have not been made or procured by means or promises forbidden by this title;
 '(4) all payments made or promised by the debtor or by a corporation issuing securities or acquiring property under the plan or by any other person, for services and for costs and expenses in, or in connection with, the proceeding or in connection with, the plan and incident to the reorganization, have been fully disclosed to the judge and are reasonable or, if to be fixed after confirmation of the plan, will be subject to the approval of the judge; and
 '(5) the identity, qualifications, and affiliations of the persons who are to be directors or officers, or voting trustees, if any, upon the consummation of the plan, have been fully disclosed, and that the appointment of such persons to such offices, or their continuance therein, is equitable, compatible with the interests of the creditors and stockholders and consistent with public policy.'
 ' § 641. Petitioning creditors; court officers; attorneys therefor
 'The judge may allow reimbursement for proper costs and expenses incurred by the petitioning creditors and reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred in a proceeding under this chapter--
 '(1) by a referee;
 '(2) by a special master;
 '(3) by the trustee and other officers, and the attorneys for any of them;
 '(4) by the attorney for the debtor; and
 '(5) by the attorney for the petitioning creditors.
 'Such compensation of referees and trustees shall not be governed by sections 68 and 76 of this title.'
 ' § 642. Representatives and other parties in interest; attorneys therefor
 'The judge may allow reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred in connection with the administration of an estate in a proceeding under this chapter or in connection with a plan approved by the judge, whether or not accepted by creditors and stockholders or finally confirmed by the judge--
 '(1) by indenture trustees, depositaries, reorganization managers, and committees or representatives of creditors or stockholders;
 '(2) by any other parties in interest except the Securities and Exchange Commission; and
 '(3) by the attorneys or agents for any of the foregoing except the Securities and Exchange Commission.'
 ' § 643. Creditors and stockholders; attorneys therefor
 'The judge may allow reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred by creditors and stockholders, and the attorneys for any of them, in connection with the submission by them of suggestions for a plan of or proposals in the form of plans, or in connection with objections by them to the confirmation of a plan, or in connection with the administration of the estate. In fixing any such allowances, the judge shall give consideration only to the services which contributed to the plan confirmed or to the refusal of confirmation of a plan, or which were beneficial in the administration of the estate, and to the proper costs and expenses incidental thereto.'